**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHY RICKETTS, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>　　　　Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Cathy Ricketts ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through her attorneys. Plaintiff believes that additional substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **INTRODUCTION**

1. Hearst Communications, Inc. ("Hearst") sold and rented, and continues to sell and rent, subscriber mailing lists containing Plaintiff's and the other Class members' names and likenesses, along with other highly sensitive personal information, to various parties on the open market, including to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other third parties. The lists Hearst sold and rented identified, by name, address, and other personal attributes, Plaintiff and every other South Dakota subscriber to its various magazine publications, including *Good Housekeeping* to which Plaintiff subscribed. Hearst's monetization of Plaintiff's and its other South Dakota subscribers' names and likenesses in this way was done in direct violation of South Dakota's Right of Publicity Law, S.D. Codified Laws §21-64-1, *et seq.* (the "SDRPL").

2.      Documented evidence confirms these facts.  For example, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, knowingly, intentionally, and willfully sold and rented to various parties the list titled "GOOD HOUSEKEEPING Mailing List," which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as a myriad of other personally identifying attributes and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history — of each of the 1,715,229 active U.S. subscribers to *Good Housekeeping* magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3.      Hearst's practices of knowingly selling and renting mailing lists on which each of its subscribers is identified by name and likeness is not limited to *Good Housekeeping* magazine, but also concern each of its other publications as well.  Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, sold and rented to various parties the mailing list titled "HEARST CORPORATE MASTERFILE & ENHANCED Mailing List", which contains the Personal Reading Information of all 9,108,589 active U.S. subscribers to all of Hearst's various publications, including Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (*i.e.*, 11.5 cents apiece), as shown, in pertinent part, in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit B** hereto.

4.      The SDRPL clearly prohibits what Hearst has done.  The SDRPL states, in pertinent part:

> No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity.

S.D. Codified Laws §21-64-2.  Hearst directly violated the SDRPL by knowingly, willfully, and intentionally using the names and likenesses of Plaintiff and Class members, each of whom has commercial value in their names and likenesses, "in connection with a product, merchandise, goods, service, or commercial activity" – namely, the subscriber mailing lists that Hearst sells and rents which identify Plaintiff and the other Class members as subscribers of its publications, without any of these individuals' prior express written consent.

5.      Hearst's practices of monetizing its subscribers' names and likenesses for commercial purposes without authorization is not only unlawful, but also dangerous because it allows any member of the public willing to purchase or rent this data to target particular subscribers, including vulnerable members of society, using their identities, interests and other demographic data.  For example, anyone could buy or rent a customer list provided by Hearst that contains the names and addresses of all women over the age of 50 who live in South Dakota, earn over $100,000 per year, belong to the Republican Party, and subscribe to *Good Housekeeping*.  Such a list is available for sale or rental on the open market for approximately $186.00 per thousand subscribers listed.

6.      So, while Hearst profits handsomely from the use of its customers' names, likenesses, and other personally identifying attributes in this way, it does so at the expense of its South Dakota customers' statutory rights of publicity.

7. Accordingly, Plaintiff brings this Class Action Complaint against Hearst for its knowing, intentional, willful, and plainly unlawful use of its customers' names and likenesses in reckless disregard of their statutorily protected rights under the SDRPL.

## PARTIES

8. Plaintiff Cathy Ricketts is, and at all times relevant to this action has been, a living, natural person and a domiciled resident and citizen of South Dakota. Plaintiff subscribed, including during the time period relevant to this action, to Hearst's *Good Housekeeping* while residing in, a citizen of, and physically present in, South Dakota. Plaintiff's personal information was included in the GOOD HOUSEKEEPING Mailing List that was sold and rented to various parties by Defendant.

9. Defendant Hearst Communications, Inc. is a Delaware corporation with its headquarters and principal place of business in New York, New York. Hearst is (or previously was, during the relevant time period) the publisher of the magazines *Bicycling*, *Car and Driver*, *Cosmopolitan*, *Country Living*, *Elle*, *Elle Decor*, *Esquire*, *Food Network Magazine*, *Harper's Bazaar*, *HGTV Magazine*, *House Beautiful*, *Marie Claire*, *Men's Health*, *Popular Mechanics*, *Prevention*, *Road & Track*, *Runner's World*, *Town and Country*, *Veranda*, *Woman's Day*, *Women's Health*, *O, The Oprah Magazine*, and Good *Housekeeping*.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11.    The Court has personal jurisdiction over Hearst because Hearst maintains its corporate headquarters and principal place of business at 300 West 57th Street in New York, New York.

12.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Hearst is subject to personal jurisdiction in this judicial District, because Hearst resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### South Dakota's Right of Publicity Law

13.    The South Dakota legislature enacted the SDRPL to establish as a matter of law that each resident of South Dakota has the right of publicity in his or her name and likeness.

14.    The SDRPL prohibits companies like Hearst from, *inter alia*, using any aspect of an individual's name or likeness in connection with a product, merchandise, good, service, or commercial activity.  Specifically, the SDRPL states, in pertinent part:

> No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity.

S.D. Codified Laws §21-64-2.  The term "personality" means a:

> [P]erson who is a citizen of this state, or who died domiciled in this state whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose that serves to identify a specific person.

S.D. Codified Laws §21-64-1(2).  The term "right of publicity" means "a personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism."  *Id.* §21-64-1(3).  And the term "commercial purpose" is

defined as, *inter alia*, "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity[.]" *Id.* §21-64-1(1).

15.     The SDRPL provides for both injunctive relief and damages (actual or statutory, whichever is greater) to a prevailing plaintiff. *See id.* §21-64-5.  With respect to statutory damages, the statute provides for "[d]amages in the amount of one thousand dollars," subject to trebling to $3,000.00 if the court finds a violation "was knowing, willful, or intentional[.]" *See id.* §21-64-5(4).

16.     Despite the fact that thousands of South Dakota residents subscribe to Hearst's various publications, Hearst disregarded its legal responsibilities to these individuals by selling and renting on the open market subscriber mailing lists that contained, *inter alia*, Plaintiff's and all of its South Dakota customers' commercially valuable names and likenesses, and thus their "personalities," without their express written consent, in direct violation of the SDRPL.

***Hearst Unlawfully Sells Mailing Lists Containing Its South Dakota Customers' Names and Likenesses, as Well as Their Addresses, and Other Personal Reading Information***

17.     Hearst maintains a vast digital database comprised of its customers' **identifying** information and other highly sensitive Personal Reading Information.

18.     Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, intentionally, and willfully sold and rented during the relevant time period, and continues to sell and rent to this day, lists on which its customers' names, addresses, and other Personal Reading Information appear.  Hearst has sold and continues to sell and rent these lists on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and other businesses. The name and address (among other personally identifying attributes) of each subscriber appears

on the lists that Hearst has sold and rented (and continues to sell and rent), and the lists identify

each such person as having purchased a subscription(s) to a particular magazine(s) from Hearst.

19.     Hearst does not seek its customers' prior express written consent to any of these

practices and its customers remain unaware that their names and other personally identifying

attributes, including their addresses and other sensitive Personal Reading Information (including

information identifying the particular publication to which each of them subscribed), are used by

Hearst in connection with the subscriber mailing lists that the company has sold and rented (and

continues to sell and rent) on the open market to any member of the public interested in purchasing

the lists or these rental services.

20.     Consumers can subscribe to Hearst's publications through numerous media outlets,

including the Internet, telephone, or traditional mail.  Regardless of how the consumer subscribes,

Hearst uniformly fails to obtain express written consent from — or even provide effective notice

to — its customers before engaging in the practices described herein.

21.     As a result of Hearst's data compiling and sales practices, any member of the public

can purchase or rent subscriber mailing lists from Hearst on which Plaintiff's and the other Class

members' names and likenesses appear.  Hearst's practices of selling and renting mailing lists in

connection with its subscribers' names, likenesses, and other personally identifying attributes in

this way puts these consumers, especially the more vulnerable members of society, at risk of

serious harm from scammers.

22.     By and through these actions, Hearst has intentionally, knowingly, and willfully

used Plaintiff's and numerous other South Dakota residents' "names" and "likenesses," which

have commercial value, "in connection with . . . product[s], merchandise, goods, service[s], [and]

commercial activit[ies]" – *i.e.*, both the subscriber mailing lists Hearst sold and rented to third

parties and its practices of selling and renting such subscriber mailing lists – without any of their "express written consent" – in direct violation of the SDRPL.  *See* S.D. Codified Laws §21-64-2.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

24.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of "all South Dakota residents who, at any point in the applicable statutory period, had their names appear on or in a mailing list sold or rented by or on behalf of Hearst (the "Class").

25.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are millions of members in the Class.  Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

26.     Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendant's wrongful conduct in violation of the SDRPL.

27.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in complex class action litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

    (a)     whether the subscriber mailing lists that Hearst sold and rented, and its practices of selling and renting such lists, on the open market to various third parties are

"products, merchandise, goods, services, or commercial activities" within the meaning of the SDRPL;

(b)     whether Hearst used Plaintiff's and the Class's "name[s]" or "likeness[es]," and whether those names or likenesses identify a specific person and have commercial value, and thus constitute "personalities," in connection with the subscriber mailing lists that it sells and rents;

(c)     whether Hearst obtained prior "express written consent" from Plaintiff and Class members to use their "rights of publicity" in connection with the sale and rental of such subscriber mailing lists and/or its practices of selling and renting such lists;

(d)     whether Hearst's practices of selling and renting such subscriber mailing lists violated the SDRPL;

(e)     whether Hearst's violations of the SDRPL were knowing, intentional, or willful; and

(f)     the appropriate amount of damages to which Plaintiff and Class members are entitled as a result of Hearst's violations of the SDRPL.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Further, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them.  In addition, individualized litigation would increase the delay and expense to all parties, multiplies the burden on the judicial system, and presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent

adjudication of the liability issues.  There will be no difficulty in the management of this action as

a class action.

## **CLAIM FOR RELIEF**
**Violation of the South Dakota Right of Publicity Law, S.D. Codified Laws §21-64-1, *et seq.***
**(By Plaintiff on Behalf of Herself and the Class)**

30.     Plaintiff repeats and incorporates herein the allegations in the foregoing paragraphs.

31.     Plaintiff brings this claim individually and on behalf of members of the above-

defined Class against Defendant.

32.     "Cathy Ricketts," which Hearst used on the subscriber mailing lists that it has sold

and rented (and continues to sell and rent), is the "name" that specifically identifies Plaintiff.  *See*

S.D. Codified Laws §21-64-1(2).  Plaintiff is a person and a citizen of the state of South Dakota

whose name and likeness have commercial value; Plaintiff is thus a "personality" within the

meaning of the SDRPL.  *Id*.

33.     Likewise, each of the Class members is a citizen of the state of South Dakota whose

name and likeness have commercial value; each member of the Class is thus a "personality" within

the meaning of the SDRPL.  *Id*.

34.     Plaintiff and each Class member have a "right of publicity," a property interest, in

their "name[s]" and "likeness[es]" within the meaning of the SDRPL.  *See id.* §21-64-1(3).

35.     Hearst is a corporation and thus a juridical "person" within the meaning of the

SDRPL.  *See* S.D. Codified Laws §21-64-2.

36.     Plaintiff subscribed to Hearst's *Good Housekeeping*. Each member of the Class

likewise subscribed to one or more Hearst publications.

37.     At no time before, or at the time Plaintiff purchased a subscription to *Good*

*Housekeeping* did Hearst notify Plaintiff that it would use her "property interest in [her] name . . .

[or] likeness" in connection with "a product, merchandise, goods, service, or commercial activity" by using her name, likeness, and other personally identifying attributes (including home address and title of the Hearst publication subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history) on or in connection with the subscriber mailing lists that it sold and rented.  *See* S.D. Codified Laws §§21-64-1 & 21-64-1.  Plaintiff has never provided "express written consent" to Hearst using her "property interest in [her] name . . . [or] likeness" for "commercial purposes" in this way.  *See id.*

38.     Hearst likewise failed to notify any of its other subscribers, including the members of the Class, that it would use their "property interest[s] in [their] name[s] . . . [or] likeness[es]" in connection with "a product, merchandise, goods, service, or commercial activity" by using their names, likenesses, and other personally identifying attributes (including home addresses and titles of the Hearst publications subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history) on or in connection with the subscriber mailing lists that it sold and rented.  *See id.* §§21-64-1 & 21-64-1.  And none of the members of the Class provided their "express written consent" to Hearst using their "property interest[s] in [their] name[s] . . . [or] likeness[es]" for "commercial purposes" in this way.  *See id.*

39.     After Plaintiff subscribed to *Good Housekeeping* from Hearst, and during the relevant statutory period, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and rented mailing lists containing Plaintiff's name, likeness, and other personally identifying attributes (including identifying and highly sensitive Personal Reading

Information, which, *inter alia*, identified her as an individual to whom Hearst had sold a *Good Housekeeping* subscription) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining Plaintiff's express written consent or even giving her prior notice of its use of her name, likeness, and other personally identifying attributes in this way.

40.     Likewise, during the statutory period relevant to this action, Hearst sold and rented mailing lists containing the names and likenesses of the members of the Class (among other identifying and highly sensitive Personal Reading Information) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining express written consent to these practices from, or even providing prior notice to, any of these individuals.

41.     Significant commercial value exists in the aspects of Plaintiff's and Class members' likenesses that Hearst used and continues to use in connection with its sales and rentals of subscriber mailing lists.

42.     Hearst's sale and rental of subscriber mailing lists containing Plaintiff's and Class members' names and likenesses, on the open market to anyone interested in purchasing them, constituted the use of "an[] aspect of" the "right[s] of publicity" of Plaintiff and Class members for "commercial purposes" within the meaning of the SDRPL.  *See* S.D. Codified Laws §21-64-2.

43.     Hearst failed to obtain the "express written consent" of Plaintiff or any Class member prior to using "an[] aspect of [their] right[s] of publicity for . . . commercial purpose[s]" in the manner alleged herein.  *Id.*

44.     By and through these actions, Hearst used "an[] aspect of" Plaintiffs' and Class members' "right[s] of publicity for a commercial purpose . . . without [their] express written consent," in direct violation of the SDRPL.  *Id.*

45.     Hearst's nonconsensual use of Plaintiff's and Class members' rights of publicity for commercial purposes did not constitute "the use of [any] personality's name . . . [or] likeness" in any "[l]iterary work," "[m]aterial that has political or newsworthy value," or an "[a]dvertisement of commercial announcement" for any use permitted by S.D. Codified Laws §21-64-6, nor did it constitute "the use of a[ny] personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism in connection with a broadcast or reporting of an event or a topic of general or public interest[.]"  S.D. Codified Laws §§21-64-6 & 21-64-8.

46.     Hearst knowingly, intentionally, and willfully used Plaintiff's and the other Class members' rights of publicity for commercial purposes in connection with the subject subscriber mailing lists and its sales and rentals of such lists in the manner alleged herein.  Indeed, during the time period relevant to this action, Hearst, either directly or through one or more intermediaries acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw the compilation and assembly of the subject subscriber mailing lists from its customer database, the use of Plaintiff's and Class members' names and likenesses in connection with such subscriber mailing lists, the advertising of such subscriber mailing lists and the ability to rent such lists on the open market, and the actual sales and rentals of such subscriber mailing lists to various third parties.  Plaintiff is informed and believes that Hearst reaped significant monetary profits through its sales and rentals of subscriber mailing lists on or in which Plaintiff's and the other Class members' names and likenesses appeared.  Plaintiff is also informed and believes that Hearst was aware of the existence of and the rights afforded under South Dakota's SDRPL and the various other states' and territories' right of publicity statutes, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation of said statutes.  Hearst has nonetheless refused to cease

14

using its subscribers', including its South Dakota subscribers', names and likenesses for commercial purposes without their express written consent in the manner described herein.

47.     Plaintiff and the members of the Class have been injured from the violations of their rights of publicity in the manner described herein.  On behalf of herself and the Class, Plaintiff seeks: (1) statutory damages of $1,000.00 per violation of the SDRPL (or of $3,000.00 per violation of the SDRPL that the Court finds was knowing, willful or intentional), pursuant to S.D. Codified Laws §21-64-5(2) & (4); (2) a declaration that Defendant's conduct described herein violates the SDRPL; (3) an injunction prohibiting Defendant from further using Plaintiff's and Class members' rights of publicity in connection with the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws §21-64-5(1); and, (4) costs and reasonable attorneys' fees to Plaintiff's counsel.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For a declaration that Defendant's conduct described herein violates the SDRPL;

C.     For an order finding in favor of Plaintiff and the Class on the count asserted herein;

        D.       For an award of statutory damages of $1,000.00 per violation of the SDRPL (or of $3,000.00 per violation of the SDRPL that the Court finds was knowing, willful or intentional), pursuant to S.D. Codified Laws §21-64-5(2) & (4);

        E.       For an injunction prohibiting Defendant from further using Plaintiff's and Class members' rights of publicity in connection with the subscriber mailing lists that it sells and rents, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws §21-64-5(1);

        F.       For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

        G.       For prejudgment interest on all amounts awarded.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 9, 2021             SCOTT+SCOTT ATTORNEYS AT LAW LLP

                               By:  s/ Joseph P. Guglielmo
                                   Joseph P. Guglielmo (JG-2447)
                                   Erin G. Comite
                                   Thomas L. Laughlin, IV
                                   Sean T. Masson
                                   Carey Alexander
                                   The Helmsley Building
                                   230 Park Avenue, 17th Floor
                                   New York, NY 10169
                                   Tel.: 212-223-6444
                                   Fax: 212-223-6334
                                   jguglielmo@scott-scott.com
                                   ecomite@scott-scott.com
                                   tlaughlin@scott-scott.com
                                   smasson@scott-scott.com
                                   calexander@scott-scott.com

                                 *Counsel for Plaintiff and the Putative Class*

16