**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BELINDA POWERS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 1:21-cv-09198-PAE-OTW |
| CATHY RICKETTS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No.  1:21-cv-09278-PAE-OTW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**<u>CONSOLIDATE AND APPOINT INTERIM CLASS COUNSEL</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

    A.   Work Identifying and Investigating the Claims in This Litigation .................................... 7

    B.   Proven Track Record and Substantial Knowledge of the Applicable Law ..................... 10

    C.   Resources Necessary to Effectively Prosecute Plaintiffs' Claims ................................... 16

    D.   Additional Factors Favor Appointing Proposed Co-Lead Counsel .................................. 17

CONCLUSION .................................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

*City of Providence, R.I. v. AbbVie Inc.*,
  No. 20-CV-5538 (LJL), 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020)...................................18

*Groover v. Prisoner Transp. Servs., LLC*,
  Case No. 15-cv-61902, 2019 WL 3974143 (S.D. Fla. Aug. 22, 2019) ............................13, 17

*Horton v. GameStop Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) .................................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
  Nos. 05 Civ. 6116(WHP), *et al.*, 2009 WL 1834351 (S.D.N.Y. June 18, 2009) .....................5

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)...................................................................................................5

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016).......................................................................................6

*Luczak v. Nat'l Beverage Corp.*,
  Case No. 0:18-cv-61631, 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ................................13

*Norberg v. Shutterfly, Inc.*,
  152 F. Supp. 3d 1103 (N.D. Ill. 2015) ....................................................................................15

*Pearlman v. Cablevision Sys. Corp.*,
  No. 10-CV-4992, 2011 WL 477815 (E.D.N.Y. Feb. 1, 2011) ..................................................6

*Sheet Metal Contr. Ass'n of N. N.J. v. Sheet Metal Workers' Int'l*,
  978 F. Supp. 529 (S.D.N.Y. 1997)............................................................................................5

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
  Rule 1 .........................................................................................................................................2
  Rule 13 .......................................................................................................................................1
  Rule 23 .......................................................................................................................................9
  Rule 23(c)(1).............................................................................................................................9
  Rule 23(g) ...............................................................................................................1, 2, 4, 6
  Federal Rule of Civil Procedure 23(g)(1)(A)............................................................................6
  Rule 23(g)(1)(B).......................................................................................................................6
  Rule 23(g)(3).............................................................................................................................6
  Rule 42(a)...........................................................................................................1, 2, 4, 5

Alabama Code
    §6-5-772............................................................................................................8
    §6-5-772(a).......................................................................................................3

California Civil Code
    §3344, *et seq.*................................................................................................3

Indiana Code
    §32-36-1-1.........................................................................................................8
    §32-36-1-8(a)(3)..............................................................................................8

Nevada Revised Statute
    §597.780...........................................................................................................8

Ohio Rev. Code
    §2741, *et. seq.*..............................................................................................3

South Dakota Codified Laws
    §21-64-1, *et seq.*.......................................................................................1, 5

Washington Revised Code
    §63.60.050.........................................................................................................8
    §63.60.070.........................................................................................................8

**Other Authorities**

Manual for Complex Litigation
    §10.22 (4th ed. 2004)....................................................................................17
    §21.11 (4th ed. 2004)......................................................................................6

Moore's Federal Practice
    §23.120(3)(a) (3d. ed. 2007)..........................................................................7

Plaintiff Belinda Powers (the "*Powers* Plaintiff") in the above-entitled action, as well as plaintiff Cathy Ricketts (the "*Ricketts* Plaintiff") in the related action *Ricketts v. Hearst Communications*, *Inc.*, No. 1: 21-cv-09278-PAE ("*Ricketts*") (the *Powers* and *Ricketts* actions are collectively referred to herein as the "South Dakota Actions"), respectfully move for an order consolidating the South Dakota Actions pursuant to Federal Rule of Civil Procedure 42(a) and appointing Erin Green Comite of Scott+Scott Attorneys at Law LLP ("Scott+Scott"), counsel for the *Ricketts* Plaintiff, and Frank S. Hedin of Hedin Hall LLP ("Hedin Hall"), counsel for the *Powers* Plaintiff (collectively, "Proposed Co-Lead Counsel"), as interim Class counsel to represent the proposed Class pursuant to Federal Rule of Civil Procedure 23(g).[1]

## INTRODUCTION

The South Dakota Actions are both putative class actions brought on behalf of the same class of South Dakota residents, each alleging a single claim for violation of the South Dakota Right of Publicity Law ("SDRPL"), S.D. Codified Laws §21-64-1, *et seq*., against the same defendant, Hearst Communications, Inc. ("Hearst" or "Defendant"), based on the same underlying conduct (namely, Hearst's alleged sales to third parties of mailing lists containing its South Dakota subscribers' names, addresses, and other personal identifying information). Given the complete factual and legal overlap between the claims alleged and the classes proposed in the South Dakota Actions, the Court has already related the *Ricketts* action to the first-filed *Powers* action pursuant to Rule 13 of the Southern District's Rules for Division of Business Among District Judges. (*See*

---

[1]     The "Class" that Proposed Co-Lead Counsel seek to represent on an interim basis is the class as defined in the complaints filed in the South Dakota Actions. (*Powers* Compl., ¶21 (defined as "all South Dakota residents who, at any point in the applicable statutory period, had their names appear on or in a mailing list sold or rented by or on behalf of Hearst"); *Ricketts* Compl., ¶24 (same).)  The *Powers* Plaintiff and *Ricketts* Plaintiff are collectively referred to herein as "Plaintiffs."

*Ricketts*, Nov. 17, 2021 docket entry).   Consolidation of the South Dakota Actions and appointment of interim class counsel are, therefore, now appropriate.

Consolidating the South Dakota Actions pursuant to Federal Rule of Civil Procedure 42(a) and appointing Proposed Co-Lead Counsel to represent the putative Class pursuant to Federal Rule of Civil Procedure 23(g) will help protect the interests of the proposed Class, serve the interests of judicial economy, and fulfill Rule 1's objective of ensuring "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Specifically, consolidation and interim appointment of interim class counsel will reduce or eliminate the inefficiencies and burdens that would result from the prosecution and defense of multiple overlapping actions by separate counsel, avoid conflicting decisions issued in separate cases, prevent unnecessary expenditures of resources by the parties and the Court, and protect the interests of the putative Class by enabling counsel to work on its members' behalf in a coordinated, streamlined manner.

## BACKGROUND

The *Powers* Plaintiff initiated her action on November 3, 2021, and the *Ricketts* Plaintiff initiated her action on November 8, 2021.  (*Powers*, ECF No. 1; *Ricketts*, ECF No. 1).  Both cases seek damages resulting from Hearst's use of its South Dakota subscribers' names, addresses, and other personal identifying information, without their consent, in violation of the SDRPL.  Both cases seek to represent the same proposed Class and both cases allege the same underlying misconduct, namely Hearst's sale of mailing lists that include personal identifying information to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and other third parties willing to purchase such lists.  On November 17, 2021, the Court recognized the similarities between the South Dakota Actions and related the matters.  (*See Ricketts*, Nov. 17, 2021 docket entry)

In addition, three judges in this District have now rejected the contention raised by Bursor & Fisher, P.A., counsel in an unrelated matter captioned *Anderson v. Hearst Communications, Inc.*, No. 1:21-cv-08895-RA ("*Anderson*"), that nine class actions asserting violations of different state right to publicity laws should be related.[2]  Specifically, Judge Ramos related the *Burke* and *Martin* actions, which each assert a violation of the CRPL on behalf of the same class of California residents.  Judge Abrams reached the same conclusion, sending *Hicks*, which was brought on behalf of a proposed class of Ohio residents asserting violations under Ohio's Right of Publicity Law, back to Your Honor, who is presiding over an earlier-filed case for violation of the ORPL.  So too did Judge Schofield, relating and consolidating *Ramirez* with a later-filed action asserting

---

[2]     In addition to *Ricketts* and *Powers*, there are seven additional putative class actions pending in this District that allege violations of South Dakota's and several other states' right of publicity statutes:  *Anderson* (putative class action originally brought on behalf of Alabama residents alleging violation of Alabama Right of Publicity Act, Ala. Code §6-5-772(a)); *Ramirez et al. v. Hearst Communications, Inc.*, No. 1:21-cv-09109-LGS-GWG (S.D.N.Y.) ("*Ramirez*") and *Lopez v. Hearst Communications, Inc.*, No. 1:21-cv-09334-LGS (S.D.N.Y.) ("*Lopez*") (both on behalf of Puerto Rico residents alleging violations of the Puerto Rico Right of Publicity Act, 32 L.R.P. §3151, *et seq.*); *Burke v. Hearst Communications, Inc.*, No.1:21-cv-08994-ER-GWG (S.D.N.Y.) ("*Burke*") and *Martin v. Hearst Communications, Inc.*, No. 1:21-cv-09624-ER-GWG (S.D.N.Y.) ("*Martin*") (both on behalf of California residents alleging violations of the California Right of Publicity Law ("CRPL"), Cal. Civ. Code §3344, *et seq.*); and *Hicks v. Hearst Communications, Inc.*, No. 1:21-cv-09093-PAE (S.D.N.Y.) ("*Hicks*") and *Begin v. Hearst Communications, Inc.*, No. 1:21-cv-09224-PAE (S.D.N.Y.) ("*Begin*") (both on behalf of Ohio residents alleging violations of the Ohio Right of Publicity Law, Ohio Rev. Code §2741, *et. seq.*).  One additional action, *Huston v. Hearst Communications, Inc.*, 1:21-cv-01196-MMM-JEH (C.D. Ill.) ("*Huston*"), is pending in the Central District of Illinois under the Illinois right of publicity statute, and that plaintiff also is represented by Proposed Co-Lead Counsel.  All of the plaintiffs in the actions pending in this District are represented by Proposed Co-Lead Counsel, except the plaintiff in *Anderson*, who is represented by Bursor & Fisher, P.A. and Edelson, P.C.  Although the issue is not presently before the Court, Plaintiffs and Proposed Co-Lead Counsel believe it is important that the various right of publicity cases against Hearst proceed on a state-by-state basis rather than in a single consolidated action alleging claims under all of the various states' statutes.  Foremost, Proposed Co-Lead Counsel note the differences between the various cases, with each alleging a claim on behalf of a distinct class for violation of a different state's right of publicity statute (which each has its own elements, defenses, exemptions, statutory period, and measure of damages, among other things), some of which have critical threshold requirements to state a claim for relief that others do not have (for example, the Alabama statute at issue in the *Anderson* action, but not any of the statutes at issue in any of the other cases, requires a plaintiff to show that the product, good, merchandise, or service in question – Hearst's subscriber mailing lists containing the plaintiff's and class members' names – entered into commerce, *i.e.*, was sold or rented, in Alabama).

violations of Puerto Rico's Right of Publicity Act on behalf of a class of Puerto Rico residents. And this Court declined to transfer the instant *Powers* action, which was brought under the SDRPL on behalf of a proposed class of South Dakota residents, to Judge Abrams, who is presiding over *Anderson*, a case filed originally under Alabama law on behalf of a proposed class of Alabama residents.  *See Powers*, ECF No. 7.

Based on the decisions of this Court and Judges Abrams, Ramos, and Schofield, it appears that courts in this District are correctly and appropriately concluding that publicity actions on behalf of putative classes of residents of different states, asserting violations of different state right of publicity laws, will proceed separately on a state-by-state basis as opposed to in a single consolidated action (involving a hodgepodge of claims under various states' statutes) before Judge Abrams, who presides over *Anderson,* the lowest-numbered right of publicity class action against Hearst pending in this District.

Thus, given that the South Dakota Actions have been related to each other but not to any of the other actions pending in this District, it is now appropriate to consolidate the South Dakota Actions pursuant to Rule 42(a) – consistent with the order recently entered by Judge Schofield consolidating the *Ramirez* and *Lopez* actions under the Puerto Rico statute – and appoint Proposed Co-Lead Counsel as interim class counsel to represent the proposed Class pursuant to Rule 23(g).[3]

## ARGUMENT

Judicial economy and fairness will be best served by the consolidation of the South Dakota Actions and the appointment of Erin Green Comite of Scott+Scott and Frank S. Hedin of Hedin

---

[3]     Courts presiding over all of the various right of publicity cases against Hearst (under all of the states' statutes in question) certainly have the discretion to, and should, instruct Proposed Co-Lead Counsel and any other plaintiffs' counsel appointed in these cases to work together to coordinate discovery and other overlapping matters that arise during the course of litigation.

Hall as co-lead interim class counsel entrusted to prosecute the litigation for the putative Class in the consolidated South Dakota Actions.

## I.     *Powers* and *Ricketts* Should be Consolidated Pursuant to Rule 42(a)

Under Federal Rule of Civil Procedure 42(a), a court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Courts enjoy "broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990. "The chief advantage of consolidation is that it avoids duplicative discovery and multiple trials and the potential for inconsistent verdicts." *In re Currency Conversion Fee Antitrust Litig.*, Nos. 05 Civ. 6116(WHP), *et al.*, 2009 WL 1834351, at *1 (S.D.N.Y. June 18, 2009) (internal citations omitted).  "In deciding whether consolidation is proper, 'the court must balance the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation.'"  *Id.*, at *2 (quoting *Sheet Metal Contr. Ass'n of N. N.J. v. Sheet Metal Workers' Int'l*, 978 F. Supp. 529, 531 (S.D.N.Y. 1997)).

Here, the *Powers* and *Ricketts* actions are legally and factually identical. Both have already been properly deemed "related" to one another, and both allege the same claim on behalf of the same South Dakota-resident class, for violation of the same South Dakota statute (the SDRPL, S.D. Codified Laws §21-64-1, *et seq.*).  Given the complete overlap between these related cases, undersigned counsel for the plaintiffs in the *Powers* and *Ricketts* actions have agreed to cooperatively prosecute the claims under the South Dakota statute on a coordinated basis to help streamline the litigation and reduce any inefficiencies or burdens to the Court or the parties that might otherwise arise.  Under the circumstances, the "anticipated benefits of consolidated actions, such as considerations of judicial economy and unnecessary costs to the parties, outweigh potential

prejudice to the parties." *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (articulating circumstances where consolidation is most warranted).

Accordingly, consolidation of the South Dakota Actions would serve the interests of judicial economy and efficiency, would avoid unnecessary duplication of efforts between counsel, and would certainly not prejudice any party.

## II.   Erin Green Comite of Scott+Scott and Frank S. Hedin of Hedin Hall Should be Appointed Interim Co-Lead Counsel Pursuant to Rule 23(g)

Federal Rule of Civil Procedure 23(g)(3) provides, "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Designation of interim class counsel protects class members because it "clarifies responsibility for the protection of the interests of the putative class during pre-certification motions, discovery, and settlement activity."  *Pearlman v. Cablevision Sys. Corp.*, No. 10-CV-4992, 2011 WL 477815, at *2 (E.D.N.Y. Feb. 1, 2011) (citing MANUAL FOR COMPLEX LITIGATION §21.11 (4th ed. 2004).  Federal Rule of Civil Procedure 23(g)(1)(A) provides the criteria a court considers in deciding whether to appoint interim class counsel:

> (a) the work counsel has done in identifying or investigating potential claims in the action;
>
> (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (c) counsel's knowledge of the applicable law; and
>
> (d) the resources that counsel will commit to representing the class.

*Pearlman*, 2011 WL 477815, at *2.  The Court may also "consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Each of these four factors weighs in favor of appointing Proposed Co-Lead Counsel to represent the proposed Class on an interim basis.

## A.   Work Identifying and Investigating the Claims in This Litigation

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken.  All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FEDERAL PRACTICE §23.120(3)(a) (3d. Ed. 2007).

Here, Proposed Co-Lead Counsel's extensive and time-consuming work identifying and investigating the novel claims alleged in the South Dakota Actions, as well as more generally the underlying theory of liability against Hearst for violating the right of publicity statutes of various states, demonstrates that they will continue to fairly and adequately represent the proposed Class. Notably, Frank Hedin of Hedin Hall, one of the Proposed Class Counsel, conceived of and developed the theory of liability under state right of publicity statutes against publishing companies, such as Hearst, based on their sales and rentals of subscriber lists containing the names and other personally identifying attributes of their subscribers.  *See* Declaration of Frank S. Hedin in Support of Motion to Appoint Interim Class Counsel ("Hedin Decl."), ¶11.  Mr. Hedin conceived of the idea over 18 months ago and spent the following year thoroughly investigating Hearst's conduct and developing the claims brought in the instant South Dakota Actions, as well as the other four actions that his firm filed against Hearst under the Ohio, South Dakota, Puerto Rico, and Illinois right of publicity statutes.  *See id.*, ¶¶11-12.  After performing this time-

7

consuming work, and consulting with numerous consumers who expressed interest in prosecuting these claims, Mr. Hedin's firm was retained by an Illinois resident to bring a claim on behalf of herself and an Illinois resident-class for violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*, which Mr. Hedin's firm filed in the Central District of Illinois on July 15, 2021, *see Huston* – marking the first case filed against Hearst under the theory that Mr. Hedin and his firm conceived of and painstakingly developed and investigated.  *See* Hedin Decl., ¶12.  After the commencement of the *Huston* action, Hedin Hall and Scott+Scott were retained by numerous other clients in California, South Dakota, Puerto Rico, and Ohio to initiate putative class actions against Hearst under each of those jurisdictions' right of publicity statutes.[4]  *See id*, ¶¶12-13.

---

[4]    Hedin Hall was also approached by potential clients from other states that have right of publicity statutes with private rights of action – including Hawaii, Indiana, Nevada, Alabama, and Washington – but declined to bring those cases in light of several threshold problems that the firm identified with potential claims under those statutes over the course of the 18 months it spent developing this theory of liability.  *See* Hedin Decl., ¶12 n.1. Incidentally, after the filing of the *Huston* action, counsel at the law firms of Bursor & Fisher, P.A. and Edelson P.C. filed a putative class action alleging a claim under the Alabama publicity statute on behalf of Alabama residents, *Anderson*. The *Anderson* action is premised on the same novel theory of liability as the first-filed *Huston* action, except under an Alabama statute that Proposed Co-Lead Counsel have no basis to believe that Hearst even violated, given that the statute only regulates the sales of goods, merchandise, products, or services that were "entered into commerce in" Alabama.  *See* Ala. Code §6-5-772. In other words, the statute only applies to Hearst's sale of mailing lists on which the plaintiff's name appeared if Hearst sold or rented the mailing lists to someone in Alabama, which Proposed Co-Lead Counsel have no information to suggest occurred.  *See id.*  This deficiency and others likely fatally infect each of the other claims that those firms have indicated they intend to bring under the Washington, Indiana, and Nevada publicity statutes as well.  *See Anderson*, ECF No. 17 at 2 (so indicating); *see also* Wash. Rev. Code §63.60.050 (Washington statute requiring the product, good or service to have "entered into commerce in" Washington) & *id.*, §63.60.070 (providing that where, as here, a "use of an individual's or personality's name, voice, signature, photograph, or likeness includes more than one individual or personality so identifiable[,] . . . the individuals or personalities complaining of the use ***shall not bring their cause of action as a class action***") (emphasis added); Ind. Code §32-36-1-1 (Indiana statute applicable only "to an act or event that ***occurs within Indiana***") (emphasis added) & *id.* §32-36-1-8(a)(3) (stating that "a claim for a violation of a personality's right of publicity may not be asserted under this chapter unless the alleged act or event of violation ***occurs within Indiana***") (emphasis added); Nev. Rev. Stat. §597.780 (Nevada statute applicable only to a "commercial use ***within this state*** of a living or deceased person's name, voice, signature, photograph or likeness") (emphasis added).

As such, not only did Proposed Co-Lead Counsel independently identify and develop the legal theory and claim pleaded in the South Dakota Actions, but instead of racing to the courthouse, Proposed Co-Lead Counsel engaged in a thorough, deliberative investigation of the law and facts surrounding Defendant's conduct prior to bringing suit.  These efforts represent a high standard of professionalism, dedication, and meticulousness, which have been marshaled to identify, develop, and demonstrate the claims alleged.  These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the courts should consider in appointing interim class counsel.

The Advisory Committee Notes also contemplate that the appointment of interim class counsel may be necessary to conduct pre-certification discovery prior to a determination to grant or deny class certification pursuant to Rule 23(c)(1), inasmuch as "some discovery is often necessary for that determination."  *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003).  The Advisory Committee Notes further state, "[o]rdinarily such work is handled by the lawyer who filed the action."  *Id*.  Here, a significant amount of discovery ***must*** occur (and related motion practice will likely be necessary) prior to class certification and trial – including before any meaningful settlement discussions can occur.  *See id.* (noting that interim class counsel may be necessary to "make or respond to motions before certification").  Discovery in this matter will be complex, nuanced, and require substantial specialized knowledge and experience to perform effectively and efficiently.  Proposed Co-Lead Counsel's thorough investigation into the claims, as well as their experience prosecuting prior similar matters (discussed further below), will enable them to effectively build and prosecute this case on behalf of the Class, including in discovery and related motion practice.

### B.        Proven Track Record and Substantial Knowledge of the Applicable Law

Ms. Comite and Mr. Hedin, with their respective firms, collectively have decades of experience successfully prosecuting complex class actions, in particular, complex actions under similar data privacy laws.  The firms of Hedin Hall and Scott+Scott have been appointed to leadership positions by federal and state courts in a variety of substantive legal contexts.  The firms' résumés, attached as Exhibit A to the Hedin and Comite declarations, describe some of the firms' successes.

The team of attorneys assigned to this litigation will be led by Ms. Comite and Mr. Hedin, with the support of senior members of each firm's data privacy practice groups.

*Erin Green Comite*: Ms. Comite, a partner with Scott+Scott, has been litigating high-profile consumer, data privacy, and securities class actions since she joined the firm in 2002.  *See* Declaration of Erin Green Comite in Support of Motion to Appoint Interim Class Counsel ("Comite Decl."), Ex. A.  Her proven ability to manage sprawling, multi-state litigations with complex and data-heavy privacy issues will be particularly beneficial to class members here.  Most recently, Ms. Comite was appointed as co-lead counsel in cases pending against sellers of toxic baby food:  *In re Plum Baby Food Litig.*, No. 21-cv-02417 (D.N.J.) (ECF No. 74) and *Wilson v. Walmart, Inc.*, No. 3:21-cv-00082 (E.D. Ark.) (ECF No. 29).  Furthermore, Ms. Comite's vast experience with complex, data-intensive cases would also be advantageous for the Class and relevant to the work needed to be done here to effectively litigate the claims alleged.  For example, Ms. Comite was the court-appointed co-lead counsel in *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 16-cv-00506 (W.D. Pa.) ("*Wendy's*"), where a settlement common fund of $50 million received final approval in 2019.  At the final approval hearing, Magistrate Judge Maureen Kelly complimented Ms. Comite and her co-counsel for their professionalism and competence,

stating in relevant part, "it's apparent to the Court that there was substantial and significant high-level work performed by counsel for the plaintiffs" and "as involved as this case was, if every case I had was as well-organized and professionally presented as this case has been, my life would be much easier." *Wendy's*, Nov. 6, 2019 Tr. at 27-28, 32 (ECF No. 194). Ms. Comite also has played an integral role in prosecuting numerous other data breach class actions on behalf of financial institutions, such as: *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, MDL No. 2583 (N.D. Ga.) (briefing and discovery committees; $27.25 million settlement); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (deposed apex witness; $59 million settlement); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2800 (N.D. Ga.) (chair of law and briefing committee (settlement valued in excess of $32.5 million on behalf of financial institutions involving data breach of credit and debit card information); and *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wa.) (briefing, discovery, and settlement committees; settlement valued at $9.8 million). Ms. Comite's background is particularly well-suited for the task of litigating this case, which involves both novel theories of recovery and, in the initial stages, the need to effectively coordinate across multiple actions.

Through years of handling complex class action cases, Ms. Comite has developed a variety of complementary talents needed to handle this type of litigation, such as experience briefing and arguing discovery and substantive motions; taking and defending depositions; working with liability and damages experts to develop the unique damages theories; negotiating and managing large electronic document and data productions; managing the legal research and briefing related to novel legal issues; detailed knowledge of consumer protection case law stemming from her direct participation in many precedent-setting consumer class actions; and a well-honed acumen for meaningful settlements. Based on the experience gained in the successful prosecutions and

landmark results in the above cases, Ms. Comite is uniquely positioned and well-qualified to represent the interests of the Class and to assist in leading the successful prosecution of this case.

Ms. Comite's firm, Scott+Scott, is an international plaintiffs' law firm with over 100 highly experienced attorneys in offices spanning from Amsterdam to London to San Diego, with its largest office in New York City. The firm specializes in complex litigation, including an emphasis on antitrust, consumer, and securities class actions. *See* Comite Decl., Ex. A. Moreover, the team Ms. Comite has assembled to staff and prosecute this action has specific experience with right of publicity issues, having published articles on the right of publicity and been interviewed by media outlets as an authority on the subject matter. *See, e.g.*, Sean T. Masson, *The Presidential Right of Publicity*, 2010 BOSTON COLLEGE INTELLECTUAL PROP. & TECH. FORUM 012001; Dave Gilson, *Most Presidents Ignore Products That Rip Off Their Names. Will Trump?*, MOTHER JONES (February 13, 2017).

The firm also currently serves in a number of privacy and data breach related litigation, which Ms. Comite is actively involved in litigating, including in *In re Google Assistant Privacy Litig.*, No. 5:19-cv-04286 (N.D. Cal.), representing consumers alleging California state law claims challenging Google Assistant's disclosure of their private, confidential communications without consent; *Lopez v. Apple Inc.*, No. 4:19-cv-04577 (N.D. Cal.), representing consumers and their minor children alleging privacy violations under California state law by Apple through its Siri application; and *In re: Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904 (D.N.J.), a data breach class action brought on behalf of consumers.

The firm's victories include successful litigation of an antitrust action that alleged price fixing conspiracy against the world's largest banks, where Scott+Scott achieved a settlement totaling over $2.3 billion. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No 13-cv-

7789 (LGS) (S.D.N.Y) ("*FX*").  Scott+Scott also has diverse and extensive experience in class action consumer protection cases, including:

- ***In re Equifax, Inc. Customer Data Sec. Breach Litig.***, No. 1:17-md-02800 (N.D. Ga.).  Scott+Scott serves as court-appointed co-lead counsel on behalf of financial institutions injured as a result of the 2017 Equifax data breach that exposed the personal and financial information of approximately 150 million U.S. consumers;

- ***The Vulcan Soc'y, Inc. v. The City of N.Y.***, No. 07-cv-02067 (E.D.N.Y.) ($100 million settlement and significant injunctive relief was obtained for a class of black applicants who sought to be New York City firefighters but were denied or delayed employment due to racial discrimination);

- ***In re Kava Kava Litig.***, No. BC 269717 (Cal. Super. Ct., Los Angeles Cty.) (obtaining settlements requiring specific warnings on kava kava products sold in California plus confidential restitutionary and other equitable remedies with certain settling defendants);

- ***In re Providian Fin. Corp. Credit Card Terms Litig.***, No. 2:10-md-01301 (E.D. Pa.) ($105 million settlement achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards);

- ***In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.***, No. 3:11-md-02208 (D. Mass.) ($40 million settlement achieved on behalf of a class of military service members and their families who purchased insurance contracts); and

- ***Gunther v. Capital One, N.A.***, No. 2:09-cv-02966 (E.D.N.Y.) (obtained net settlement resulting in class members receiving 100% of their damages).

***Frank S. Hedin***: Mr. Hedin began his legal career as a law clerk to a federal district court judge, as did each of the other attorneys at Hedin Hall (David W. Hall and Arun G. Ravindran) who will assist in the firm's prosecution of these matters.  *See* Hedin Decl., ¶15.  Since co-founding Hedin Hall with Mr. Hall in 2018, courts have recognized Hedin Hall's "extensive experience in class actions," *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018), and regularly noted the quality of Mr. Hedin's work on behalf of the firm's clients.  *See, e.g.*, *Groover v. Prisoner Transp. Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) (noting that Hedin Hall "provided excellent and thorough representation in a case that was exceptionally time-consuming").  Over the past three years alone, Hedin Hall has secured over

$100 million for class members in consumer-privacy, financial services, and securities class actions. *See* Hedin Decl., ¶9.

Mr. Hedin has significant experience handling data security and data privacy claims on behalf of consumer classes – including, notably, in cases against publishers (among them Hearst) for selling subscribers' personal information. *See id.*, ¶4 (citing *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (counsel for consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA")); *Huguelet v. Maxim Inc.*, No. 19-cv-4452-ALC (S.D.N.Y.) (class counsel, resolved case favorably for consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's PPPA); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same); *see also e.g.*, *Olsen v. ContextLogic Inc.*, No. 2019-CH-06737 (Cook Cty. Cir. Ct., Ill. Jan 7, 2017) (class counsel, $16 million data-privacy class action settlement); *Donahue v. Everi Payments, Inc.*, No. 2018-CH-15419 (Cook Cty. Cir. Ct., Ill.) (class counsel, $14 million data-privacy settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (class counsel, $10 million data-privacy action settlement)).

Mr. Hedin also regularly serves as lead plaintiffs' counsel in class actions that implicate, as is the case with the instant matter, novel questions of first impression concerning the rights of consumers under relatively unknown state statutes, as well as the constitutional issues (standing and otherwise) that often arise during the prosecution of such matters in federal court. *See* Hedin Decl., ¶5. For example, in data-privacy class actions concerning publishers' sales of subscriber lists – substantially the same conduct at issue in this case – Mr. Hedin recently obtained groundbreaking decisions on two important issues under Michigan's PPPA that dramatically

14

expanded the scope of the statute and led to the recovery of meaningful relief for consumers throughout Michigan. *See id.* (citing *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018) (holding, despite prior district court decision to the contrary on the same issue, that the version of the PPPA in effect prior to its July 2016 amendment applied to claims filed after the amendment's effective date); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020) (holding that Michigan-based publishers may be held liable for disclosing the data of all of their subscribers, even those outside Michigan)).

Mr. Hedin also obtained multiple significant victories for consumers on issues of first impression in litigation against Google and Shutterfly under an Illinois statute, the Biometric Information Privacy Act ("BIPA"), opening doors for consumers throughout the state to recover relief under the statute. *See* Hedin Decl., ¶6 (citing *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015) (holding that scans of face geometry collected from photographs constitute "biometric identifiers" within the meaning of BIPA); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) (holding that neither the presumption against extraterritoriality nor the dormant commerce clause bars BIPA's application to the collection of Illinoisans' biometrics from devices within Illinois); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017) (holding that the nonconsensual collection of a scan of face geometry, a bare violation of BIPA, is a concrete and particularized injury sufficient to confer Article III standing)).

Most recently, Mr. Hedin has devoted much of his time to developing, investigating, and commencing the instant *Powers* action and the various other cases his firm's clients have brought against Hearst under the right of publicity statutes of Illinois, California, Puerto Rico, and Ohio. *See* Hedin Decl., ¶10.  Mr. Hedin is well-suited to continue representing the affected Class members in the South Dakota Actions given the significant amount of work he and his firm have

performed preparing these cases, as well as prosecuting the other consumer data-privacy matters outlined above.  *See id.*, ¶¶16-17.

*     *     *

In short, both firms have significant knowledge and experience with the subject matter, along with a long track record of successfully representing clients with data privacy claims.  And Ms. Comite and Mr. Hedin are proven leaders who know how to obtain significant results for the class.  Their respective experience compliments each other and will serve class members well.

### C.   Resources Necessary to Effectively Prosecute Plaintiffs' Claims

Proposed Co-Lead Counsel each have well-established and successful practices and have the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar class actions, including in this District.  As a result, the firms can fully utilize their resources and knowledge of local practice.  Proposed Co-Lead Counsel have already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed Class.  The firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will allow them to streamline and effectively prosecute the litigation and thus, be of great value to the putative Class.

The firms of Scott+Scott and Hedin Hall collectively draw from a team of over 100 highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation, as well as a full team of non-lawyer professionals and support staff.  The proposed Class will further benefit from Scott+Scott's unique ability to conduct end-to-end e-discovery in-house, a capability it developed and applied in numerous complex cases that involved millions of documents.  These resources will result in a savings for the Class over the course of this litigation.  As such, courts

and mediators have lauded the resources and commitment of Proposed Co-Lead Counsel in representing clients in class action cases.  For instance, renowned mediator, Kenneth R. Feinberg, concluded that Scott+Scott's efforts in *FX* "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and that Scott+Scott was "superlative, sophisticated, and determined plaintiff's lawyers."  *See FX*, ECF No. 925 at 2; *id.*, ECF No. 926, ¶29.  Similarly, United States District Judge, Beth Bloom, of the Southern District of Florida has recognized the "excellent and thorough representation" provided by Hedin Hall, including in "exceptionally time-consuming" cases.  *Groover*, 2019 WL 3974143, at *2.

The same is true with respect to this action.  If appointed to represent the Class, Proposed Co-Lead Counsel will continue to commit the same resources and effort to this case as they have committed to their other, successful class action litigations.

### D.    Additional Factors Favor Appointing Proposed Co-Lead Counsel

Several additional factors support appointment of Mr. Hedin and Ms. Comite as Interim Co-Lead Counsel: ***First***, this motion would give members of the proposed Class the benefit of sophisticated and experienced counsel who, as discussed above, have a track record of achieving landmark results in data privacy class actions.  ***Second***, the decision among sophisticated counsel to submit a joint application for appointment strongly supports granting this motion.  The MANUAL FOR COMPLEX LITIGATION §10.22 (4th ed. 2004) advises that, efforts by "attorneys [to] coordinate their activities without the court's assistance . . . should be encouraged."  ***Third***, through their decades of combined experience prosecuting complex class actions the firms of Hedin Hall and Scott+Scott, have developed significant relationships with industry experts, regulatory personnel, and settlement administration experts.

***Finally***, the bench and bar have recognized the importance of considering diversity as a relevant factor in selecting interim class counsel. *See, e.g.*, *City of Providence, R.I. v. AbbVie Inc.*, No. 20-CV-5538 (LJL), 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020). Ms. Comite's firm, Scott+Scott, was recently recognized by Law360 as a "Ceiling Smasher" for its representation of women in their equity partnership. Female attorneys make up more than a third of Scott+Scott's equity partnership and Scott+Scott's Executive Committee, and the firm believes that its commitment to diversity is one of the reasons it was recognized by U.S. News & World Report for 2021, as a "Best Law Firm." Additionally, half of the attorneys at Hedin Hall are minorities, which reflects the firm's deep commitment to ensuring that a diverse group of attorneys work on behalf of each of its clients. *See* Hedin Decl., ¶16. Ms. Comite, Mr. Hedin, and their firms are committed to employing a diverse group of attorneys to work on this action to represent the diverse interests of all Class members.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the South Dakota and appoint Erin Green Comite of Scott+Scott and Frank S. Hedin of Hedin Hall as interim co-lead counsel to steer the South Dakota Actions on a prudent course on behalf of the putative Class.

December 8, 2021

Respectfully submitted,

  *s/ Erin Green Comite*
Erin Green Comite
Joseph P. Guglielmo
Thomas L. Laughlin, IV
Sean T. Masson
Carey Alexander
**SCOTT+SCOTT ATTORNEYS
  AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-4478
Facsimile:  (212) 233-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com
tlaughlin@scott-scott.com
smasson@scott-scott.com
calexander@scott-scott.com

Arun G. Ravindran
Frank S. Hedin (*pro hac vice* forthcoming)
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile:  (305) 200-8801
aravindran@hedinhall.com
fhedin@hedinhall.com

David W. Hall (*pro hac vice* forthcoming)
**HEDIN HALL LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-3534
dhall@hedinhall.com

*Proposed Co-Lead Class Counsel for
Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Erin Green Comite*
Erin Green Comite